**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| PEDRO OUTTER,<br><br>**Plaintiff,**<br>v.<br><br>MARRIOTT P.R. MANAGEMENT CORPORATION D/B/A SAN JUAN MARRIOTT RESORT & STELLARIS CASINO, JOHN DOE I-X; AND AIG INSURANCE COMPANIES; AS WELL AS ANY OTHER JOINT TORTFEASORS,<br><br>**Defendants.** | CIVIL NO. 18-1070 (RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, District Judge

Pending before the Court is Defendants Marriott P.R. Management Corporation d/b/a San Juan Marriott Resort & Stellaris Casino, John Doe I-X; and AIG Insurance Companies; as well as any other joint tortfeasors' *Motion for Summary Judgment* ("*Motion for Summary Judgment*" or "*MSJ*") (Docket No. 13). Plaintiff Pedro Outten ("Plaintiff" or "Mr. Outten")[1] subsequently filed an *Affirmation in Opposition to Summary Judgment Motion* ("Opposition"). (Docket No. 14). After considering the parties' submissions, the Court **GRANTS** Defendants' *Motion for Summary Judgment* for the reasons set below.

---

[1] There is a discrepancy regarding the spelling of Mr. Outten's name. While initially it appeared as Mr. Outter (Docket No. 1), starting at Docket No. 11, Plaintiff's name appears as Mr. Outten. Since the spelling appears as "Outten" in Defendants' MSJ and SMUF as well as in Plaintiff's Deposition and in his *Opposition*, for clarity's sake the Court shall adopt the same herein.

## I. PROCEDURAL BACKGROUND

On February 2, 2018, Plaintiff sued Defendants Marriott P.R. Management Corporation d/b/a San Juan Marriott Resort & Stellaris Casino ("Marriott"), John Doe I-X; and AIG Insurance Companies; as well as any other joint tortfeasors (collectively, "Defendants") for damages pursuant to Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141. (Docket No. 1 at 1). Plaintiff claims he was struck on the head and neck by the "barrier gate" located in front the garage owned and operated by Marriott. Id. at 3. This allegedly caused him to suffer serious injuries. Id.

On January 31, 2019, Defendants filed an MSJ (Docket No. 13) alongside a *Statement of Uncontested Material Facts* ("SUMF") (Docket No. 13-1). Plaintiff then filed his *Opposition* to the same. (Docket No. 14). The Court will herein address the pending MSJ.

## II. LEGAL STANDARD

A motion for summary judgment is governed by Fed. R. Civ. P. 56(a). Summary judgment is proper if "the movant shows [...] no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence "is such that a reasonable jury could resolve the point in the [non-movant's] favor." Mercado-Reyes v. City of Angels, Inc., 320 F. Supp. 3d 344, 347 (D.P.R. 2018) (quotation omitted). A fact is material if "it is relevant to the resolution of a controlling legal issue raised by the motion

for summary judgment." Bautista Cayman Asset Co. v. Terra II MC & P, Inc., 2020 WL 118592, at *6 (D.P.R. 2020) (quotation omitted).

The moving party has "the initial burden of demonstrat[ing] the absence of a genuine issue of material fact with definite and competent evidence." Mercado-Reyes, 320 F. Supp. 344 at 347 (quotation omitted). The burden then shifts to the nonmovant, to present "competent evidence to rebut the motion." Bautista Cayman Asset Co., 2020 WL 118592, at 6* (quoting Méndez-Laboy v. Abbott Lab., 424 F.3d 35, 37 (1st Cir. 2005)). A nonmoving party must show "through submissions of evidentiary quality, that a trialworthy issue persists." Robinson v. Town of Marshfield, 950 F.3d 21, 24 (1st Cir. 2020) (quotation omitted). Most notably, while a court will draw all inferences in favor of the non-movant, summary judgment may be appropriate if the nonmoving party's case "rests merely upon 'conclusory allegations, improbable inferences, and unsupported speculation.'" Burke Rozzetti v. Ford Motor Co., 2020 WL 704860, at *3 (D.P.R. 2020) (quotation omitted).

Finally, Local Rule 56 also governs summary judgment. *See* L. CV. R. 56. Per this Rule, a nonmoving party must "admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. Local rules such as Rule 56, "are designed to function as a means of 'focusing a district court's attention on what is and what is not-genuinely

controverted.'" Marcano-Martinez v. Cooperativa de Seguros Multiples de Puerto Rico, 2020 WL 603926, at *2 (D.P.R. 2020) (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). The First Circuit has further highlighted that "[p]roperly supported facts [...] shall be deemed admitted unless controverted in the manner prescribed by the local rule." Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH, 781 F.3d 510, 520 (1st Cir. 2015) (quotation omitted).

### III. FINDINGS OF FACT

Before stating the uncontroverted material facts, the Court addresses a compliance issue which arose when reviewing the SUMF and supporting documents. (Docket No. 13-1).

First, Mr. Outten contends in his *Opposition* that Defendants failed to file a complete copy of Plaintiff's January 18, 2019 Deposition ("Deposition") as required by Local Rule 56. *See* D.P.R. Civ. R. 56; Docket No. 14 at 10-11. However, a lack of a complete transcript does not mean that its excerpts should automatically be stricken from the record. Instead, the appropriate remedy is for Plaintiff to file either a complete copy of the transcript or of the missing pages. *See e.g.,* Leighton v. Three Rivers Sch. Dist., 2015 WL 272894, at *2 (D. Or. 2015), aff'd, 693 F. App'x 662 (9th Cir. 2017) (finding that although Defendant failed to include a reporter's certification or cover page, the fact that "Plaintiff independently offered a properly authenticated copy of Plaintiffs

deposition […] [is] sufficient evidence that the document is what the parties purport it to be.") *See also*, Russo v. City of Hartford*,* 2004 U.S. Dist. LEXIS 21092, *7 (D.Conn. 2004) (denying motion to strike in the absence of arguments that transcripts were inaccurate or altered and that if they were not what they purported to be, opposing counsel "should have brought that to the court's attention by specifics and with a copy of the certified transcript.").

Second, Plaintiff also avers that Defendants failed to provide an authenticated copy of the Deposition since they did not include a reporter's certificate alongside the deposition transcript per Fed. R. Civ. P. 30(f). (Docket No. 14 at 10-11). The Court disagrees. Multiple District Courts have held that if deposition excerpts include a cover page identifying the deponent, the action, the time and place of the deposition, the excerpts were properly authenticated under Fed. R. Evid. 901(b)(4). *See e.g.*, Glob. Med. Sols., Ltd v. Simon, 2013 WL 12065418, at *9 (C.D. Cal. 2013) (stating that deposition was authenticated because "[a]lthough not accompanied by a reporter's certification, the excerpts […] have a cover page that references this action and the deponent's name."); Renteria v. Oyarzun, 2007 WL 1229418, at *2 (D. Or. 2007) (absent a showing that the excerpts were fraudulent, deposition transcripts that lacked a copy of the court reporter's certification but included a cover page identifying the deponent,

the action and the time and place of the deposition were authenticated under Fed. R. Evid. 901(b)(4)); Stanley Martin Cos. v. Universal Forest Prods. Shoffner LLC, 396 F.Supp.2d 606, 613 (D. Md. 2005) (holding compliance of excerpt deposition with Fed. R. Evid. 901 when testimony was taken during present litigation, opposing party was represented by counsel, and opposing party was surely in possession of copies); Commercial Data Servers, Inc. v. Int'l Bus. Machines Corp., 262 F. Supp. 2d 50, 59 (S.D.N.Y. 2003) ("the appearance of the [deposition transcripts], each of which includes a cover page and the title page, and the circumstances through which they are presented to the Court […], authenticates them.")

Here, Plaintiff attempts to strike the Deposition because it lacks a reporter's certification and it was not filed in full. (Docket No. 14 at 10-11). However, in his *Opposition*, Plaintiff cites the very same Exhibit he now seeks to strike to show that Mr. Outten testified that the mechanical gate which allegedly caused his physical injuries had a defect. (Docket No. 14 at 2). Plaintiff also quotes the Deposition to aver that he was not "trying" to get hit by the mechanical gate. Id.

Plaintiff cannot have it both ways. In citing the Deposition, Plaintiff is essentially adopting the statements within the excerpts that were originally submitted by Defendants. *See* Fenje v. Feld, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003), aff'd, 398

F.3d 620 (7th Cir. 2005) ("although a deposition transcript should be certified by the court reporter, objecting that the certification is missing is inappropriate and merely obstructive when the objecting party has **no basis for believing the transcript is inauthentic or inaccurate**.") The Deposition excerpts filed by Defendants include a cover page with the names of the parties, the civil case number and the date and location of the Deposition. (Docket No.13-2 at 1). Further, Plaintiff does not contend, and has not proffered any evidence on the record suggesting, that his Deposition is an inauthentic or inaccurate record of his testimony. Defendants may thus rely on the Deposition excerpts in their MSJ and SUMF. *See* Chaney v. City of Orlando, Fla., 2005 WL 8159900, at *7 (M.D. Fla. 2005) (holding that a moving party may rely on depositions if the names of the parties, date, and civil case number appear on the cover of each deposition and the opposing party presents no evidence that said depositions are not accurate records of the deponents' testimony).

Most of Defendants' thirteen (13) facts in their SUMF were supported by a record citation to either the *Complaint* (Docket No. 1), the *Answer to Complaint* (Docket No. 7) or Mr. Outten's Deposition (Docket No. 13-2). However, Fact Nos. 2 and 10 were supported by pages of the Deposition transcript **not proffered to the Court and are stricken from the record**. *See* D.P.R. Civ. R. 56;

De la Mata v. Puerto Rico Highway & Transp. Auth., 920 F. Supp. 2d 219, 226 (D.P.R. 2012).

The Court further notes that Plaintiff failed to properly contradict Defendants' material facts in his *Opposition*. As such, the following eleven (11) facts are deemed unopposed:

1. Pedro Outten alleged that he was a resident of New York at the date of the filing of the Complaint. (Docket No. 13-1 ¶ 1).

2. Marriott P.R. Management Corporation is a corporation organized under the laws of Puerto Rico which operates and manages a hotel under the name San Juan Marriott & Stellaris Casino. (Id. ¶ 3).

3. Mr. Outten stayed in the Hotel as a guest of Tonya Capers in Room 531 of the Hotel, where they stayed from August 14, 2017 to August 20, 2017. (Id. ¶ 4).

4. The Hotel had a parking garage in its premises, which has "barrier gates" in its entrance and in its exit. (Id. ¶ 5).

5. Prior to the accident on August 19, 2017, Mr. Outten had walked on the crosswalk next to the exit barrier gate many times before the accident. (Id. ¶ 6).

6. Mr. Outten was aware prior to his accident on August 19, 2017 about the existence of such barrier gates at the entrance and exit of the parking garage. (Id. ¶ 7).

7. Mr. Outten also knew that there was a pedestrian crosswalk marked on the floor for pedestrians to walk. (Id. ¶ 8).

8. Plaintiff conceded that nothing prevented him from looking at the barrier gate. (Id. ¶ 9).

9. Mr. Outten essentially conceded that the cause of the accident was that he had received a call to his cell phone and got distracted. He testified the following:

    Q So you weren't looking when the barrier came down, because if you had been looking you would've avoided it, right?

    A Yeah, of course, yeah.

    Q And why weren't you looking?

    A Because I received a call or something that got my attention, yeah.

    Q Oka. So you were distracted by the phone call?

    A Yeah. It had to be. (Id. ¶ 11).

10. The following deposition testimony of Mr. Outten establishes that the accident occurred when he was distracted with his cell phone call:

    Q And so why you didn't get hit all the times that you passed there before?

    A Because I didn't receive a phone call at that moment, maybe that could be what it is. It's an accident. (Id. ¶ 12).

11. Mr. Outten does not know of any defect in the barrier gate and does not even recall ever saying that the barrier gate was defective. The following testimony illustrates said averment:

    Q You claimed in the complaint that the barrier was defective. What was the defect?

    A I don't recall…I don't recall that, I just recall me getting hit by a gate.
    ….
    …
    Q Okay. So you are not saying that the barrier was defective?

    A No, I don't recall saying that. (Id. ¶ 13).

## IV.   ANALYSIS

### A. Premises Liability under Article 1802

The substantive law of Puerto Rico controls in this diversity case. *See* Rivera-Marrero v. Presbyterian Cmty. Hosp., Inc., 2016 WL 7670044, at *1 (D.P.R. 2016) (quoting Summers v. Fin. Freedom Acquisition LLC, 807 F.3d 351, 354 (1st Cir. 2015))("Since this is a diversity case, we look to federal law for guidance on procedural matters (such as the summary judgment framework) and to state law (here, [Puerto Rico] law) for the substantive rules of decision."). Plaintiff brings the present suit under Articles 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit § 31, § §5141 ("Article 1802"). (Docket No. 1 at 1). Article 1802 imposes tort liability on "[a] person who by an act or omission causes damage to another through fault or negligence." P.R. Laws. Ann. tit 31, §5141. Moreover, "[w]hen a dangerous condition is present on commercial premises and injury results to a business invitee, tort liability often turns on whether the owner or occupier knew or reasonably should have known of the existence of the hazard." Calderon-Ortega v. United States, 753 F.3d 250, 251 (1st Cir. 2014). The First Circuit has explained that "liability will **only** arise if the damages complained of were **reasonably foreseeable**." Blomquist v. Horned Dorset Primavera, Inc., 925 F.3d 541, 547 (1st Cir. 2019) (quotation omitted).

Business owners have "a duty to keep said establishment in a safe condition so that the clients do not suffer harm or damage." Smith v. Condado Duo La Concha SPV, LLC, 2017 WL 9121575, at *3 (D.P.R. 2017), report and recommendation adopted, 2017 WL 6453306 (D.P.R. 2017) (quotation omitted). However, this does not mean that they are automatically liable for *every* damage that occurs. Instead, a business owner is only deemed liable for "risky conditions inside the business premises that the owner **knew or should have known existed**." Id. Therefore, a plaintiff must show "that the defendant had actual or constructive knowledge of the dangerous condition that most likely than not caused the damage." Id. (quotation omitted). To establish this constructive knowledge, "plaintiff must prove either the existence of the dangerous condition for an unreasonable or excessive length of time or, […] the owner's insufficient prevention policy or failure to implement the policy." Leonhardt v. Aerostar Airport Holdings LLC, 294 F. Supp. 3d 13, 18 (D.P.R. 2018) (quotation omitted).

Hotels are no exception to this rule. The First Circuit has held that "[a]lthough they are not absolute insurers of their guests' well-being, hotels have a heightened duty of care towards their guests." Blomquist, 925 F.3d at 547. Thus, a hotel will be found to have breached its duty of care to its guests if "(1) the hotel knew or should have known of the [dangerous preexisting] condition, and (2) the hotel did not take the precautions of a

prudent and reasonable person to avoid or remedy the foreseeable risks the condition created." Id. Lastly, the District of Puerto Rico has also explained that "there is **no obligation** to protect the visitor [of a business establishment such as a hotel] **against dangers which are known to [the visitor]**, or which are **so apparent that he may reasonably be expected to discover them** and be able to protect himself." Robles v. Pablo Fajardo, 2016 WL 2637814, at *2 (D.P.R. 2016) (citing Figueroa-Garcia v. United States, 364 F.Supp.2d 140, 143 (D.P.R. 2005)). When evaluated against these standards, the Court is of the view that summary judgment as to Plaintiff's Article 1802 claim is proper.

First, a look at the uncontroverted facts reveals that Plaintiff failed to proffer any evidence of a dangerous condition or of a design defect. When asked during his Deposition if he believed that the mechanical gate of the parking garage had a defect, he concedes that he did not think it did, nor did he recall saying in the first place that the mechanical gate had a defect. (Docket No. 13-2 at 84, l. 13-24 and 85, l. 1-3). The pertinent part of the Deposition reads as follows:

> Q  You claimed in the complaint [and in the answer to the interrogatories] that the barrier was defective. What was the defect?
>
> A  I don't recall … I don't recall that, I just recall getting hit by a gate.
>
> Q  Okay. So you don't know…

> A I don't know, I don't know what happened, I don't … it just happened. It's not like I was trying to make something happen, it just happened.
>
> **Q Okay. So you are not saying that the barrier was working defective?**
>
> **A No, I don't recall saying that.**

Id. On the contrary, Plaintiff averred in his *Opposition* that he testified that the barrier had a defect when he stated that "the traffic control arm came down right on [him while he was in] the pedestrian the barrier was defective cross walk …." (Docket No. 14 at 2, 6) (citing Docket No. 13-2 at 97, l. 12-14). However, Plaintiff's *Deposition* testimony shows that he does not recall seeing a defect on the mechanical gate. *Cf.* Hoose v. United States, 2019 WL 5986698, at 3 (M. G. Ga. 2019) (holding that a plaintiff who knew of an issue concerning a swinging gate, informed his supervisor that it was a safety hazard, and still chose to go through the gate which resulted in his injuries, could not hold the Government liable for his injuries because he assumed the risk of getting hit by the gate).

Hence, since Plaintiff testified that he failed to see a defect in the mechanical gate, and further failed to proffer any evidence demonstrating a potential defect, any arguments alleging negligent design or negligent maintenance of the mechanical gate are unavailing. The Opinion in Cedeño Nieves v. Aerostar Airport

Holdings LLC is helpful in this regard. *See* Cedeño Nieves v. Aerostar Airport Holdings LLC, 251 F. Supp. 3d 360, 368-369 (D.P.R. 2017). In Cedeño, the District Court of Puerto Rico held that a Plaintiff could not allege negligent maintenance of an escalator by simply stating, without more, that the area of the escalator was "dark, confusing, and lacking proper warning signs." Id. Nor could the Plaintiff posit a breach by negligent design when she failed to identify the design of either the hallway, escalator or design of the building where the escalator was located. Id. The Cedeño Court further stated that "[w]ithout a dangerous condition, defendant did not breach of the duty of care." Id. (citing Cotto v. Consol. Mut. Ins. Co., 16 P.R. Offic. Trans. 786, 795, 116 D.P.R. 644 (P.R. 1985). Likewise, here Plaintiff has failed to show a dangerous condition and cannot show that defendant breached a duty of care towards him.

Second, even if the Court were to conclude that a dangerous condition existed, Plaintiff also failed to submit evidence that Marriott and the other Defendants knew of the supposed dangerous condition. For example, Plaintiff failed to include reports of other incidents related to the mechanical arm or to the parking garage in general. *See e.g.*, Catalano v. Menard Inc., 2017 WL 2720432, at *5 (N.D. Ill. 2017) ("Plaintiff fails to show that Menards knew or could have known of a dangerous condition. There had been no complaints, reports, and no employee had seen any

malfunctioning of the automatic doors.") Plaintiff also failed to allege **any** facts in his *Opposition*, nor did he proffer any evidence to prove that Defendants had constructive or actual knowledge of the alleged dangerous condition. (Docket No. 14). Instead, Plaintiff focuses his *Opposition* on premises liability in general terms and on the alleged contributory negligence attributed by Defendants to Plaintiff in their MSJ. (Docket No. 14 at 7-9).

This is insufficient to conclude that a dangerous condition existed, and that Defendants knew about it and failed to act. *See e.g.* Carlo-Blanco v. Inmobiliaria Comercial, Inc., 59 F. Supp. 3d 399, 404 (D.P.R. 2014) (holding that a plaintiff failed to adduce sufficient knowledge of a dangerous condition when his only reference to defendant's alleged knowledge was that "[t]he defendants in this case could have foreseen or reasonably anticipated that in the fashion the cement on the ramp was kept, that any prudent person could have walked over it, trip and fall, like the plaintiff precisely experienced."); Smith 2017 WL 9121575, at *4 (finding that without evidence that La Concha hotel was informed by the elevator manufacturer that Elevator #2 needed more service calls than the standard, plaintiff cannot establish that La Concha had actual knowledge of this need, should have known, or breached its duty of care.); Situ v. O'Neill, 124 F. Supp. 3d 34, 44 (D.P.R. 2015) (citation omitted) ("Notwithstanding the heightened duty of care and protection, the hotel and its

administrator are **not** liable for their guests' harm unless the harm is reasonably foreseeable.")[2]

Third, the record shows that (1) Plaintiff had crossed in front of the gate through the crosswalk "many times" before his accident without incident and (2) conceded that there was a crosswalk for pedestrians marked on the floor. While he alleges that the mechanical gate "struck him" while he was walking on the crosswalk, he has failed to offer any proof as to how the Defendants caused his injury. For example, the Deposition excerpts cited by Defendants reveal that Plaintiff knew of the existence of the barrier gate he now alleges caused him physical injury. (Docket No. 13-2 at 78, l. 1-6). Plaintiff likewise stated that there was a pedestrian crosswalk and that nothing prevented him for looking at the gate while going through the crosswalk. Id. at 80, l. 2-4 and 105, l.7-9. The Court also notes that Plaintiff answered "yes" to questions from Defendants' counsel during the Deposition regarding if he had passed "**many times before the accident**" by the parking area, which was adjacent to barrier gates of the entrance and exit to the parking lot. Id. at 77, l. 13-24.

---

[2] The Restatement (Second) of Torts § 3434(A) also recognizes that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land **whose danger is known or obvious to them**, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A (1965). As stated herein, Plaintiff has not proffered proof that Defendants should have anticipated any harm would come to Plaintiff because of the parking lot's mechanical gate.

Evidently, Plaintiff was aware of the gate and how it functioned when he passed by it before his incident. *See e.g.*, Rodefer v. Hill's Pet Nutrition, Inc., No. IP 01-123-C H/K, 2003 WL 23096486, at *7 (S.D. Ind. 2003) (finding that Plaintiff failed to show that he was not aware of the dangers of a "rapid-roll" door because he "testified that he went through the door in question thirty to forty times a day over the course of his four-year employment with ECT" and that he "knew that the door would come down if he cleared the photo eyes and no weight was on the floor sensors.").

Most glaringly, Plaintiff conceded that the **only difference** between when he suffered an injury and all the other times he had passed by the mechanical gate without incident was that before he had not received a phone call. Id. at 97, l. 16-20. At the time of the accident, however, he was on a call and was distracted. The pertinent part of the Deposition reads as follows:

> Q So you weren't looking when the barrier came down, because if you had been looking you would've avoided it, right?
>
> A Yeah, of course, yeah.
>
> Q **And why weren't you looking?**
>
> A **Because I received a call or something that got my attention, yeah.**
>
> Q **Oka. So you were distracted by the phone call?**
>
> A **Yeah. It had to be.**

(Docket No. 13-2 at 8, l. 4-13).

As the District Court of Puerto Rico has stated time and time again, "even though an owner or occupier of commercial premises must exercise due care for the safety of its patrons, **it is not liable in tort without a showing of fault**." Cedeño, 251 F. Sup. 3d at 370 (quoting Calderon-Ortega, 753 F.3d at 254). In the case at bar, it is evident that a potential danger to Plaintiff was "**so apparent that he may reasonably be expected to discover [it] and be able to protect himself**." Robles, 2016 WL 2637814, at *2 (citation omitted). Moreover, Plaintiff acknowledged in his deposition that he did not protect himself **because he was distracted by a phone call**. Given that Plaintiff has failed to present evidence evincing a link between Defendants' acts or omissions to his injuries, Plaintiff's claims under Article 1802 cannot survive summary judgment.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' *Motion for Summary Judgment* at Docket No. 13. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 18th day of March 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge